**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**ALEXANDERIA A. B.**

                              **Plaintiff,**                    **20-CV-1888Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

───────────────────────────────

## DECISION AND ORDER

      As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #33.

### BACKGROUND

      Plaintiff applied for disability insurance benefits with the Social Security

Administration ("SSA"), on October 16, 2017, alleging disability beginning July 1, 2017,

at the age of 25, due to post traumatic stress disorder ("PTSD"), anxiety, depression,

arthritis and knee issues. Dkt. #12, pp.69-70.

      On January 23, 2020, plaintiff appeared without counsel at an

administrative hearing before Administrative Law Judge ("ALJ"), Martha Bower, but the

hearing was adjourned to give plaintiff an opportunity to obtain counsel and also because the record did not contain any medical records from the past two years. Dkt. #12, pp.60-68.

On June 11, 2020, plaintiff appeared without counsel and testified, along with an impartial vocational expert ("VE"), Renee Jubrey, at an administrative hearing by telephone before ALJ Jason Mastrangelo. Dkt. #12, pp.33-68. Plaintiff stated that she was unable to find an attorney. Dkt. #12, pp.37-38.

Plaintiff testified that she lived with her son, age 7, who is disabled and receiving special education services at school. Dkt. #12, p.39. Plaintiff is a full-time student at Buffalo State College receiving accommodations to complete assignments late and have additional time for tests. Dkt. #12, pp.41-42. She was working at a day care part time in 2019, but was fired because she failed to call in when she was experiencing symptoms from her mental illness. Dkt. #12, p.43. Plaintiff testified that she uses marijuana because it eases her anxiety more effectively and more immediately than her medication. Dkt. #43, p.45. She doesn't like to say she is depressed, but acknowledged her anxiety, explaining that she sometimes finds herself shaking and can't calm herself down. Dkt. #12, pp.46-47. She attends classes to stay connected rather than isolated, but indicated that she has missed classes because she couldn't get out of bed and has experienced a few panic attacks in class. Dkt. #12, p.47. She noted that her teachers were aware of her condition and worked with her. Dkt. #12, p.47. She testified that her feelings can be so strong sometimes that she ends up so depressed that she cannot function. Dkt. #12, p.48. She was encouraged to take

a birthday trip to Atlanta but was so depressed that she hated the trip. Dkt. #12, p.49. She doesn't want to be labeled as disabled and dislikes talking about her condition because she feels other people may think she is lying or looking for attention. Dkt. #12, p.50.

The VE classified plaintiff's past work as a personal care attendant, which is a semi-skilled, medium exertion position and teacher's aid, which is a light exertion, semi-skilled position. Dkt. #12, p.52. When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limitation who could carry out simple tasks, tolerate simple changes in the work setting and maintain occasional interaction with co-workers, supervisors and the general public, the VE testified that plaintiff could not perform her past work, but could work as a marker, routing clerk or mail clerk, each of which were unskilled, light exertion positions. Dkt. #12, pp.52-53.

The ALJ rendered a decision that plaintiff was not disabled on June 26, 2020. Dkt. #12, pp.12-27. The Appeals Council denied review on October 16, 2020. Dkt. #12, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 21, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

        To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria

of a disabling impairment, the Commissioner considers whether the claimant has

sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-

(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to

the Commissioner to demonstrate that the claimant could perform other jobs which

exist in significant numbers in the national economy, based on claimant's age,

education and work experience. 20 C.F.R. § 404.1520(g).

        In the instant case, the ALJ made the following findings with regard to the

five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the alleged onset date of July 1, 2017; (2) plaintiff's PTSD constitutes a

severe impairment; (3) plaintiff's impairment did not meet or equal any listed

impairment; (4) plaintiff retained the RFC to perform work at all exertional levels with the

following limitations: attention and concentration for simple tasks and instructions,

simple routine changes in work setting and occasional interaction with coworkers,

supervisors and the general public; and (5) plaintiff was not capable of performing her

past work as a home attendant or teacher's aide but was capable of working as a

marker, routing clerk, or mail clerk, each of which were unskilled, light exertion

positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #12,

pp.18-27.

        Plaintiff argues that the ALJ failed to properly evaluate the opinions of her

treating psychiatrist Lauren Derhodge, DO and Psychiatric Social Worker, Erin

Giardina, LCSW-R. Dkt. #21-1, pp.14-16.  Specifically, plaintiff argues that the ALJ

ignored LCSW-R Giardina's January 22, 2020 opinion letter despite the fact that she

had been treating plaintiff since November of 2015. Dkt. #21-1, pp.15-16. Plaintiff also

argues that the ALJ failed to develop the record, which was particularly important given

plaintiff's lack of representation and mental illness and the ALJ's determination that Dr.

Derhodge's opinion was stale. Dkt. #21-1, pp.16-21. Plaintiff argues that Dr. Marks'

opinion, upon which the ALJ relied, was just as stale as Dr. Derhdoge's opinion, noting

plaintiff's deteriorating mental health status subsequent to those opinions. Dkt. #21-1.

p.21. In any event, plaintiff argues that the ALJ should not have relied upon the single

examination of a state agency reviewing psychologist when plaintiff's treating providers

were available to provide opinion evidence. Dkt. #21-1, pp.22-24. Finally, plaintiff

argues that the ALJ erroneously substituted his own lay opinion regarding plaintiff's

mental health limitations. Dkt. #21-1, pp.24-31.


        The Commissioner responds that the ALJ properly evaluated conflicting

opinion evidence and reasonably concluded that Dr. Marks' assessment was

persuasive, while Dr. Derhodge's assessment was unpersuasive. Dkt. #25-1, pp.10-13.

The Commissioner argues that pursuant to the updated regulations, the opinion of a

treating source is not inherently more valuable than a non-treating source. Dkt. #25-1,

pp.13-16.  The Commissioner further argues that the ALJ was not required to obtain

opinion evidence from plaintiff's therapist because the ALJ possessed three medical

opinions assessing plaintiff's mental limitations, including an opinion from one of her

own medical sources, Dr. Derhodge. Dkt. #25-1, pp.17-18. The Commissioner notes

that the therapist's treatment records were part of the record and that Dr. Marks

considered her treatment notes in rendering his opinion. Dkt. #25-1, pp.18-19. The Commissioner argues that LCSW-R Giardina's assessment includes a list of symptoms but does not identify impairment related limitations and improperly opines as to issues reserved for the Commissioner. Dkt. #25-1, pp.19-20. In any event, the Commissioner argues that  LCSW-R Giardina's assessment is essentially duplicative of the opinion of Dr. Derhodge, which the ALJ evaluated properly. Dkt. #25-1, pp.20-21. Finally, the Commissioner argues that Dr. Marks' opinion supports the ALJ's determination that plaintiff is capable of employment. Dkt. #25-1, pp.21-25.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules"*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021), *citing* 20 C.F.R. § 404.1520c(a) & (c) & 20 C.F.R. § 416.920c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c) & 20 C.F.R. § 416.920c(b)(2)*.*

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1) & 20 C.F.R. § 416.920c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2) & 20 C.F.R. § 416.920c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

The ALJ found the opinion of state agency reviewing psychologist, M. Marks, Ph.D., to be consistent with the record and persuasive. Dkt. #12, p.24. For the reasons set forth below, the Court finds that Dr. Marks' assessment of the severity of plaintiff's mental impairments is neither supported by nor consistent with the medical evidence of record, necessitating remand for the Commissioner to properly assess plaintiff's mental RFC.

In an Initial Disability Determination Explanation dated March 22, 2018,

Dr. Marks reviewed plaintiff's records from the Erie County Medical Center ("ECMC"),[1]

as well as the consultative psychiatric examination of Janine Ippolito, Psy. D. Dkt. #12,

p.75. Dr. Ippolito noted plaintiff's report of psychiatric hospitalization in 2015, 2016 and

2017 and psychiatric medical records diagnosing acute stress disorder and depression.

Dkt. #12, p.449. Plaintiff reported suffering from depression since childhood, as well as

childhood physical and sexual abuse, causing "nightmares, flashbacks, angry outbursts,

and fear of the dark."  Dkt. #12, p.449. She reported "sad and depressed mood,

tearfulness, loss of interest in activities, fatigue, a lack of motivation for tasks, and

social withdrawal, as well as a "history of self-harm behavior, such as cutting and

burning herself." Dkt. #12, p.450. Plaintiff also endorsed "excessive apprehension and

worry, nervousness, difficulty sleeping, and avoidance of social situations." Dkt. #12,

p.450. She also reported "panic attacks characterized by trembling and feeling

paralyzed, like she cannot leave a certain space wherever the panic attack occurs." Dkt.

#12, p.450. On examination, her intellectual functioning was estimated to be average to

below average, with fair insight and judgment. Dkt. #12, pp.451-452. Dr. Ippolito

diagnosed plaintiff with major depressive disorder, recurrent, severe; PTSD with panic

---

[1]. Plaintiff was admitted to ECMC's Comprehensive Psychiatric Emergency Program ("CPEP"), in October of 2015 after driving her car into a pole and in June of 2016 after she reported suicidal thoughts and feeling overwhelmed. Dkt. #12, p.615. Plaintiff was brought to CPEP on October 8, 2017 for evaluation by her son's grandmother due to  suicidal ideation. Dkt. #12, pp.371 & 374. A Mobile Outreach Psychosocial Assessment was conducted on December 21, 2017 after plaintiff had a panic attack and went into a full bathtub with her clothes on as part of a grounding exercise. Dkt. #12, p.549. Subsequent to Dr. Marks' assessment, on October 24, 2019, plaintiff was taken to Sister's Hospital after overdosing on her medication and struggled with police officers as they attempted to transfer her to ECMC for psychiatirc evaluation, necessitating administration of Haldol and Ativan. Dkt. #12, pp.627 & 637.

attacks; and unspecified personality disorder with borderline features, and opined that her prognosis was guarded. Dkt. #12, pp.452-453. Dr. Ippolito opined that plaintiff could "sustain an ordinary routine and regular attendance at work with moderate to marked limitations, and she can regulate emotions, control behavior and maintain well-being with marked limitations." Dkt. #12, p.452.

Dr. Marks noted Dr. Ippolito's functional limitations, but determined that their severity was not supported by the medical evidence because plaintiff had no history of psychiatric hospitalization (though he recognized that she did present to ECMC CPEP on three occasions), and was not prescribed psychiatric medications. Dkt. #12, p.76. Dr. Marks determined that plaintiff would be moderately limited in her ability to understand and remember very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods, perform activities within a schedule; maintain regular attendance and punctuality; work in coordination with or in proximity to others without being distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Dkt. #12, pp. 75-76.

-10-

The ALJ determined that Dr. Ippolito's opinion was only somewhat persuasive because "[t]he generally benign findings on mental status examination do not support the marked limitations identified by Dr. Ippolito." Dkt. #12, p.24. In addition, the ALJ determined that plaintiff "exhibits an ability to control behavior and regulate emotions as evidenced by her enrollment in full time college courses." Dkt. #12, p.24. The ALJ noted that plaintiff is very functional in that she attends college, raises a child and manages her household. Dkt. #12, p.24. The ALJ concluded that "[t]here was nothing revealed during the doctor's examination, and certainly nothing anywhere else in the evidentiary record to suggest that the claimant has a marked limitation in any area of function." Dkt. #12, p.24.

In fact, the record contains a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form which was completed by plaintiff's treating psychiatrist, Lauren Derhodge, DO, on October 10, 2017, indicating that she had treated plaintiff since November of 2015, and that plaintiff was very limited in her ability to understand and remember instructions; carry out instructions; maintain attention/concentration; make simple decisions; interact appropriately with others; and maintain socially appropriate behavior without exhibiting behavior extremes due to chronic and severe symptoms from PTSD, as well as major depressive disorder, recurrent. Dkt. #12, pp.369-370. The ALJ determined that Dr. Derhodge's opinion was not persuasive because it was remote in time and inconsistent with the longitudinal evidence. Dkt. #12, p.25.

Although Dr. Derhodge's medical source opinion preceded Dr. Ippolito's

consultative evaluation by four months, Dr. Derhodge's treatment notes continue

through June 21, 2019, at which time, for example, plaintiff reported

> feeling tired and "overwhelmed with life." . . . Says she is
> trying hard to be a "good person, a good mother, work and
> go to school" and is finding trouble coping with stress. Says
> she has been falling behind in school. Says she [is] "tired of
> trying" and wishes she could "be in a coma." She reports
> feeling unsure of the medication. Says that when she takes
> it, she feels like it is "not working" but notes that when she
> stops taking it, she feels worse in terms of mood and
> anxiety. . . . She endorses problems with focus and
> motivation, both impacting her functioning at school.

Dkt. #12, p.615. Thereafter, her care was transferred to Joan Canzoneri, NP, who

reported plaintiff

> has been having some intrusive thoughts of past trauma . . .
> She states she felt she was dissociating yesterday as she
> wasn't able to remember words, was trying to talk but
> couldn't get out what she wanted to say.

Dkt. #12, p.688. Plaintiff informed NP Canzoneri that

> she feels paranoid, scared . . . She feels she sometimes has
> ideas [that] are outlandish, feeling someone may follow her
> and is out to get her in some way. She then talks herself out
> of the thoughts and tries to distract herself. She states she is
> easy to startle, feeling jumpy, but sometimes feels clam. She
> states sometimes she doesn't know what day it is. She loses
> [t]rack of time, sometimes does not remember going home,
> the walk to or from school. She goes to Buffalo State. She
> sometimes loses track in conversations. She has intermittent
> SI, not wanting to be here, confused why she is here, denies
> thoughts of plans. . . . She has thoughts of wanting to cut
> herself. She last cut herself in November. . . . She does feel
> "paranoid," likely hypervigilance.
>
> Client reports anhedonia, stating she just gets through the
> day, and is not even able to enjoy doing things with her son.
> . . . She generally goes to school, then stays in the house.
> She has [been] isolating herself. She states some days she

> misses school. She lacks motivation at times, has been
> often late, she has crying spells, and feels sometimes there
> [is] a trigger causing the crying, and sometimes not.
>
> She reports frequent racing thoughts, especially at night. . . .
> She has excessive worry about what she has to do the next
> day. She states sometimes she wakes at night and cooks,
> and does not remember doing it. She gets shakiness,
> pressure in her chest, sometimes stutters, often feels
> overwhelmed in crowded spaces. She has had panic attacks
> recently at court, crying and unable to get herself out of the
> corner she tries to hide in. She would get stuck in the
> bathroom when overwhelmed at work. She often feels
> impending doom.

Dkt. #12, pp.688-689.

        To the extent that the ALJ was concerned that Dr. Derhodge's initial

mental RFC was stale, the ALJ had an affirmative obligation to request an updated

medical source opinion from Dr. Derhodge or NP Canoneri to clarify plaintiff's  mental

RFC during the relevant period.  *See Amanda v. Comm'r of Soc. Sec.*, 545 F. Supp.3d

40, 48 (W.D.N.Y. 2021) (emphasizing duty to develop record where plaintiff is *pro se*

and where plaintiff is suffering from mental illness, given the difficulty of assessing

ability of such individuals to adapt to the demands or stress of the workplace);

*Maldonado v. Comm'r of Soc. Sec.*, 524 F. Supp.3d 183, 194 (S.D.N.Y. 2021) (noting

"doubly heightened" duty to develop record where plaintiff was *pro se* and alleging

mental impairment).

        Furthermore, the ALJ erred in failing to address LCSW-R Giardina's

January 22, 2020 opinion letter. Dkt. #12, p.538. Medical source opinions from licensed

individuals working within the scope of practice permitted under state or federal law are medical opinion evidence under the *Revisions to Rules. Sonia N.B.A. v. Kijakazi,* 21-CV-709, 2022 WL 2827640, at *7 n.4 (D.Ct. July 20, 2022); *See* 20 C.F.R. § 404.1502(d) & 20 C.F.R. § 404.1513(a)(2). LCSW-R Giardina advised that she had treated plaintiff since November of 2015 for "complicated mental health symptoms that create ongoing suffering and often interfere with her momentum in daily life." Dkt. #12, p.538. LCSW-R Giardina explained that plaintiff

> is smart, a strong advocate, and generally well respected on the job, however, she cannot remain consistently employed due to the frequent interference of her mental health symptoms. Her panic attacks and overwhelming fears at times prevent her from leaving her home, prevent her from taking public transportation to get to her jobs, and make her an unpredictable and unreliable employee. When stressors in her life overwhelm her, which happens more often and easier to her than to others, she shuts down completely and wants to run away. This has caused her to either be let go from jobs or led her to terminating her own employment in the past. Over the years as she has gotten more comfortable with myself as her therapist, we have begun to explore her symptoms of dissociation more, bringing more awareness to these symptoms, which has led to these symptoms worsening and becoming more problematic of a barrier, as is often the case with complex trauma work. Symptoms can often get worse before getting better. Due to her dissociative symptoms, she often has trouble keeping track of dates, times, and appointments; she is forgetful; she cannot always recall details, conversations, things she has agreed to, commitments she has made, or things/skills she has already learned. She has not been able to maintain employment for any consistent period of time in the last 2 years. This is in no doubt due to her complex mental health symptoms and interferences. She decided to return to school 2 years ago as a way of furthering herself, her goals, and her education. However, just returning to school was never and has never been her full time plan. I have seen her attempt to make money and work jobs during these last 2 years, and she has been unable to maintain enough mental

> stability to achieve this. While being a good student, I've
> seen her struggle tremendously with even attending and
> completing school assignments due to the same constant
> interferences her mental health symptoms which negatively
> affect her daily life and her ability to cope. I have written
> several letters of accommodation for her schooling, as it
> seems mental health crisis continues to impede her ability to
> successfully adhere to and commit to her school
> responsibilities as well.

Dkt. #12, pp.538-539.

Given the medical source opinions from plaintiff's long-term treating

psychiatrist and therapist, as well as the medical source opinion from the consultative

examining psychologist and plaintiff's more recent mental health provider, it is clear that

the ALJ's reliance upon the state agency reviewing psychologist's initial disability

determination is improper and his determination of plaintiff's mental RFC is not

supported by substantial evidence, necessitating remand for further proceedings. *See*

*Cochran v. Comm'r of Soc. Sec*., 17-CV-6628, 2019 WL 2718197, at *2 (W.D.N.Y. June

28, 2019) (remanding where, *inter alia*, ALJ relied upon non-treating state agency

consultant who never met or personally assessed plaintiff and rendered opinion before

record was developed); *See also, Velazquez v. Barnhart*, 518 F. Supp.2d 520, 524

(W.D.N.Y. 2007) ("In the context of a psychiatric disability diagnosis, it is improper to

rely on the opinion of a non-treating, non-examining doctor because the inherent

subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to

personally observe the patient.").

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #21), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #25), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
             **March 24, 2023**

                                    __s/ H. Kenneth Schroeder, Jr.__
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**